# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

        v.                                      **Criminal Action No. 2:12cr20**

**APRIL DAWN KENNEY,**

    **Defendant.**

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, April Dawn Kenney, in person and by counsel, Lary Garrett, appeared on October 1, 2012. The Government appeared by Stephen Warner, its Assistant United States Attorney.

The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count Nine of the Indictment. Thereupon, the Court proceeded with the Rule 11 proceeding by first placing Defendant under oath. The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. . The Court asked counsel for the Government to summarize the written Plea Agreement. The Court then inquired of counsel if the agreement now under consideration was the only agreement offered to Defendant, to which both counsel responded that it was the sole agreement offered. Defendant's counsel further advised that he had reviewed the agreement with Defendant. Defendant stated the agreement as summarized by counsel for the Government was correct and complied with her understanding of the same. The Court **ORDERED** the written Plea Agreement filed.

The Court next inquired of Defendant concerning her understanding of her right to have an Article III Judge hear the entry of her guilty plea and her understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant stated in open court that she voluntarily waived her right to have an Article III Judge hear and accept her plea and voluntarily consented to the undersigned Magistrate Judge hearing and accepting her plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of her counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, April Dawn Kenney, only after having had her rights fully explained to her and having a full understanding of those rights through consultation with her counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned Magistrate Judge examined Defendant relative to her knowledgeable and voluntary execution of the written plea bargain agreement signed by her, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned inquired of Defendant regarding her understanding of the written plea agreement. Defendant stated she understood the terms of the written plea agreement and also stated that it contained the whole of her agreement with the Government and no promises or representations were made to her by the Government other than those terms contained in the written plea agreement.

The undersigned reviewed with Defendant Count Nine of the Indictment, including the elements the United States would have to prove at trial, charging her with possessing pseudoephedrine to be used to manufacture methamphetamine, in violation of Title 21, United States Code, Section 841(c)(2). Defendant at this point appeared to the Court to be unsure about the elements of the offense to which she was pleading guilty.

The Court continued the proceedings at this point to allow Defendant to further review the proceedings and written agreement with her counsel. The Court then asked Defendant if she had been able to discuss the agreement and proceedings with her counsel, to which she replied she "felt much better now." She advised that she was ready to proceed. She advised she had discussed and understood the elements the government would have to prove at a trial, and understood the charge to which she was pleading.

The undersigned then reviewed with Defendant and determined Defendant understood the possible statutory maximum sentence which could be imposed upon her conviction or adjudication of guilty on that charge was imprisonment for a term of not more than twenty (20) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood she would be subject to up to three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable within 40 days following entry of her guilty plea. She also understood that her sentence could be increased if she had a prior firearm offense, violent felony, or drug conviction. She also understood she might be required by the Court to pay the costs of her incarceration and supervised release.

The undersigned also reviewed with Defendant her conditional waiver of appellate rights as follows:

Ct: Did you and Mr. Garret discuss that you have a right to appeal your conviction and your sentence to the Fourth Circuit Court of Appeals within 14 days of Judge Bailey's telling you what that sentence would be?

Def: Yes.

Ct: Did you and your attorney discuss and did you understand from that discussion that you may collaterally attack or challenge the sentence and how that sentence is being carried out against you by filing a habeas corpus-type motion filed under Title 28 United States Code section 2255?

Def: Yes.

Ct: Did you discuss with Mr. Garrett and do you understand from that discussion, that under paragraph 14 of your written plea agreement, if the District Judge imposes an actual sentence which is equal to or lower than a guideline sentence which has a total guideline offense level of 26 or lower, then you give up your right to appeal that actual sentence and you give up your right to collaterally attack or challenge how that sentence is being carried out?

Def: Yes.

Ct: Did you read and understand paragraph 14 before you signed the written plea agreement?

Def: Yes.

From the foregoing colloquy the undersigned determined that Defendant understood her appellate rights and knowingly gave up those rights pursuant to the conditions in the written plea bargain agreement.

The undersigned Magistrate Judge inquired of Defendant, her counsel, and the Government as to the non-binding recommendations and stipulation contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's

entry of a plea of guilty to the felony charge contained in Count Nine of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court, and only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court adjudicate the Defendant guilty of the felony offense contained in Count Nine of the Indictment and make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulation contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced her to a sentence which was different from that which she expected, she would not be permitted to withdraw her guilty plea. Defendant acknowledged her understanding and Defendant maintained her desire to have her plea of guilty accepted.

Defendant also understood that her actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that she understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced her to a higher sentence than she expected, she would not be permitted to withdraw her guilty plea. Defendant further understood there was no parole in the federal system, although she may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Thereupon, Defendant, April Dawn Kenney, with the consent of her counsel, Lary Garrett, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in count Nine of the Indictment.

The Court heard the testimony of Randolph County Sheriff's Deputy Allen Vanscoy, who testified he was experienced in the investigation of meth labs, although not an expert. He testified that police responded to a call that a female was passed out in a car in the Kmart parking lot. Deputy Dyer found Defendant in the car. She gave her consent to search. Deputy Dyer found used tin foil and approximately 15 cards for pseudoephedrine products that one takes to the pharmacist to have filled. A Board of Pharmacy check showed that prior to the Kmart incident, Defendant and her co-defendant Jeffrey Corley had made a number of purchases of pseudoephedrine products. She and Corley had a relationship and lived together and had a child together. In May 2012, each purchased pseudoephedrine products three times, both on the same dates. Specifically, Defendant purchased pseudoephedrine on May 22nd, 2012. Later there was a call from Corley to police to look for Defendant because he had not seen her in a day. At the time a Deputy was in the McDonald's parking lot when a van pulled in. Defendant was in the passenger seat. The deputy received consent from the driver to search the van. He found coffee filters, kerosene, drain cleaner, and lithium batteries, all items in his experience that were used in the manufacture of methamphetamine.

Police obtained a search warrant for Defendant and Corley's residence in Randolph County, West Virginia. When they arrived, they saw Steve Miller coming out of the residence and going to an adjacent outbuilding. They detained him and searched him. He had lithium batteries and a coffee filter with a residue that field-tested positive for methamphetamine. The officers smelled an odor consistent with methamphetamine coming from the outbuilding. The doors were open and they could see a soda bottle with a white substance inside. The bottle had plastic tubing coming from the top with a vapor

6

coming from it. It appeared to be an active meth lab. At that point the officers backed off and called an expert to secure the area.

Defendant gave a statement to United States Forest Services Agent Lawrence Smithson. She stated that she had met Barbara Thomas and became friends with her. She would bring Thomas pills which she traded for dope. Thomas had cooked meth at her residence.

Defendant stated she heard, understood and agreed with Deputy Vanscoy's testimony. The undersigned United States Magistrate Judge concludes Defendant's plea of guilty to the offense charged in Count Nine of the Indictment is supported by the testimony of Deputy Vanscoy.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood her right to have an Article III Judge hear and accept her plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting her plea; Defendant understood the charges against her, not only as to the Indictment as a whole, but in particular as to Count Nine of the Indictment; Defendant understood the consequences of her plea of guilty, including the maximum statutory penalty; Defendant made a knowing and voluntary plea of guilty to Count Nine of the Indictment; and Defendant's plea is independently supported by the testimony of Deputy Vanscoy, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained in Count Nine of the Indictment and recommends she be adjudged guilty on said charge as contained in Count Nine of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is continued on release pursuant to an Order Setting Conditions of Release previously entered in this case, modified to permit Defendant and Corley to be in contact only for the purpose of child visitation, and only to the extent permitted by involved agencies. She would also be permitted to leave her place of residence to go with her father on Fridays to play cards, as long as there was no illegal activity involved.

It is so **ORDERED**.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

DATED: October 2, 2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE